FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
12/11/2025
JEFFREY P. COLWELL, CLERK

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Ming Huang,

*Plaintiff,*

**v.**

RedPeak Properties, LLC,
Sherman Residential LLC,
Mark Windhager,
Nicole Mabanag,
Justin Thornburg,
Fernando Vasquez,

*Defendants.*

Civil Action No.

## COMPLAINT (FAIR HOUSING ACT) AND JURY DEMAND

### I.  INTRODUCTION

1.      My name is Ming Huang, and I am a person with disabilities within the meaning of the Fair Housing Act (FHA) and the Colorado Anti-Discrimination Act (CADA). This is a civil rights action for protected-class discrimination, retaliation, sexual harassment, negligent supervision, related violations. and parallel Colorado law.

2.      Beginning late March, a RedPeak property manager set off a series of escalations actions that constitute retaliation. It began after three staff approached my door to serve a written notice. I sent an email to the manager that included my protected disclosure (trauma history), two accommodation requests: (1) No Group Approach and (2) Clearer Communications, and I engaged in protected activity by challenging ambiguous discipline.

3.      The manager's response ignored the disclosure, denied both requests, and failed to initiate the interactive process. She instead reiterated an eviction warning, introduced legal counsel's involvement, and still did not clarify the original infraction.

4. She then escalated further: speaking with police, reporting she was "afraid" of me, disclosing tenant information, then later withholding legally requested documents contained in my tenant file. These retaliatory actions compounded for weeks without correction.

5. After triggering multiple incidents, the manager stopped responding to my emails entirely. The next time I hear from her is five weeks later — she rejected of my full payment to cure the eviction, and stated that all attempts to escalate internally would "route back" to her.

6. I notified RedPeak Officers in real time, and they did nothing. Established in 2001, RedPeak did not have the safeguards to protect my civil rights. No escalation path, no whistleblower protections, and no designated person to advocate for vulnerable tenants. As an Asian woman with PTSD, living alone, I relied on these systems for safety.

## II.  JURISDICTION AND VENUE

7. This action arises under the Fair Housing Act, **42 U.S.C. § 3601 et seq.**, presenting a federal question under **28 U.S.C. § 1331**. The Court also has supplemental jurisdiction over related state-law claims under **28 U.S.C. § 1367**.

8. Venue is proper in the District of Colorado under **28 U.S.C. § 1391(b)** because all events occurred in Denver County, where Defendants conduct business.

## III. PROCEDURAL BACKGROUND

9. This complaint for discrimination and retaliation follows receipt of a 100-day letter from the Colorado Civil Rights Division (CCRD), which notifies parties that the agency's preliminary 100-day investigation period has elapsed.

10.     The CCRD investigation is ongoing, in partnership with the U.S. Department of Housing and Urban Development (HUD). I will amend this Complaint when the agency issues its formal determination (Case No. H2600029711).

## IV. PARTIES

11.     I, **Ming Huang**, proceed pro se. I am the sole author of all filings in my cases.

12.     **Defendant RedPeak Properties**, LLC is a property management company responsible for creating and enforcing company policies, training staff, and supervising on-site managers and employees. RedPeak is co-owned by non-party Partners Enterprise Capital LLC ("PEC"), its sole equity partner since RedPeak's formation, which participates in RedPeak's governance structure.

13.     **Defendant Sherman Residential** LLC owns the residential building where I lived (7S Denver Haus) and retained RedPeak to staff, manage, and oversee the property.

14.     **Defendant Mark Windhager** is a cofounder of RedPeak and the registered agent for Sherman Residential. He served as Chief Executive Officer during the period relevant to this Complaint and personally received a preservation-of-records notice from me.

15.     **Defendant Nicole Mabanag** was the property manager at 7S Denver Haus (7S) during the events described in this Complaint.

16.     **Defendant Fernando Vasquez** was employed by RedPeak as a maintenance technician. In prior interactions, Vasquez made unwelcome personal comments toward me. On March 27, 2025, he entered my unit to complete a work order and remained inside longer than necessary for the assigned task, leaving only after I verbally stated a boundary.

17. **Defendant Justin Thornburg** was employed by RedPeak as the maintenance supervisor, and was Vasquez's direct superior. Thornburg participated in the group approach to my door that occurred ten minutes after Vasquez exited my unit.

## V.  FACTUAL ALLEGATIONS

### A.  DISCRIMINATION TIMELINE

18. **September 2021**: I move into 7S Denver Haus

19. **February 2025**: Mabanag was promoted as property manager for my building.

20. **March 27, 2025**: Mabanag, Thornburg, and another staff member appeared at my door to serve a written Demand for Compliance.

21. **March 28, 2025**: I send an email disclosing trauma history, requested two disability-related accommodations, and engaged in protected activity challenging ambiguous discipline.

22. Mabanag's response ignored my disclosure, denied both requests, and did not clarify the reason for the demand. Later that same day, without initiating the interactive process, Mabanag speaks with police, stated she was "afraid" of me and disclosed tenant information.

### B.  RETALIATION TIMELINE

23. **April 3, 2025**: Windhager received a preservation-of-records notice which included allegations of retaliation. He did not respond to my email, and Mabanag remained my only point of contact.

4

24.     **April 8, 2025**: After contacting police, applying financial pressure, and initiating legal threats, Mabanag stopped responding to me entirely.

25.     **May 13, 2025**: Mabanag rejected my full payment to cure the eviction.

26.     **May 15, 2025**: I moved out. No walk-through was offered. A balance of $7,859 was later sent to collections.

27.     **August 12, 2025**: RedPeak, Sherman Residential, and Mabanag ("the Respondents") received the CCRD Charge of Discrimination. Windhager stepped aside as CEO, and into his current role as Senior Advisor to the Members of the Board. Josh Foley took office as CEO.

28.     **August 22, 2025**: I emailed CEO Josh Foley, offering an opportunity to de-escalate and he did not respond.

29.     **August 29, 2025**: Mabanag submitted a sworn **Affidavit** (**Exhibit A**)containing provable inconsistencies and admittedly unverified evidence. RedPeak's **Position Statement** (**Exhibit B**) written by outside counsel, Lindsay Jasper from Tschetter Sulzer Muccio, P.C., heavily relied on the Affidavit.

30.     Prior to filing their exhibits, no one from RedPeak Properties, Partners Enterprise Capital, or Tschetter Sulzer Muccio, P.C. initiated or engaged in the interactive process with me.

### C.  SPOLIATION TIMELINE

31.     **April 3–4, 2025**: Windhager, Mabanag, and RedPeak Chief Operating Officer (COO) Faith Aids received (1) my preservation-of-records notice and (2) my Colorado

Privacy Act (CPA) record request specifically for materials used to justify the March 27 Demand for Compliance.

32.     **April 5, 2025**: Mabanag responded, "We will not be able to provide you any documentation," without citing an exemption, then did not respond to my follow-up email.

33.     **May 30, 2025**: A post-move out debt of $7,859 was emailed (pdf) to me and a hard copy mailed to my address. These are the only documents I have received after my April 4 CPA record requests.

34.     **August 29, 2025**: The records withheld from me were submitted to the CCRD.

## D.  FABRICATIONS

35.     In her sworn affidavit, Mabanag claimed that she personally served me a notice, in person, on **April 5, 2025**. This statement was incorrect. I was not at the property between **March 30 and April 7, 2025**.

36.     Photographs of my apartment door as evidence used against me. Both the affidavit and the Position Statement describe the source of these images as "surveillance," however, there has never been a fixed camera on the 5th floor where I resided.

37.     A handwritten "Mommy Note" stating, "Mommy loves you, be good, I'm watching" was produced and submitted as evidence. I did not write this note.

## E.  PRIVACY VIOLATION

38.     Admitted unverified, the materials described, along with text messages described as "sexual in nature," were used to justify procedural escalations such as the March 27 Demand for Compliance — the ambiguous disciplinary action that was never explained to me.

39. Mabanag received a complaint from a tenant regarding the text messages. She did not attempt to speak with me before three staff members appeared at my door. Without formal process, a male tenant's complaint was taken at face value, without verification. I only learned the basis for the Demand, not from RedPeak, but from their exhibits after I already had been displaced.

40. These materials were concealed from me. I did not consent to Defendants sharing sensitive and implicating materials internally, with outside counsel, then placing them in a state record prior to fulfilling my Colorado Privacy Act (CPA) record request.

## F. SEXUAL HARASSMENT

41. On March 27, 2025, Defendant Vasquez entered my unit to complete a work order. I removed myself from the situation by leaving the apartment for approximately 45 minutes. When I returned, Vasquez was still inside my home. I asked, "What are you still doing here?" and he gathered his things and hurried out.

42. Within ten minutes of Vasquez exiting my unit, Defendant Thornburg (Vasquez's direct supervisor), Mabanag (the new property manager), and the housekeeper appeared at my door. Staff at 7S Denver Haus were aware that Vasquez had shown inappropriate personal interest in me.

43. After I moved out, Vasquez contacted me saying that I had left documents in the unit and offered to give them to me. I instructed him to drop the documents at the front desk of my workplace, but he did not do so. When I later inquired about the documents, Vasquez offered to meet with me directly and stated that he had moved into 7S Denver Haus. These

exchanges occurred only months after I had been displaced from my home of three and a half years.

## VI. CLAIMS FOR RELIEF

44.    Defendants acted willfully and in reckless disregard of my rights.

45.    I re-allege all paragraphs above as part of these claims.

## A.  FAIR HOUSING ACT — DISABILITY

### CLAIM 1 — FAILURE TO ACCOMMODATE

Against All Defendants

*FHA, 42 U.S.C. § 3604(f)(3)(B)*

46.    Defendants failed to reasonably accommodate my disabilities by denying both requested accommodations on March 28, 2025, and refusing to initiate the legally required interactive process after my disclosure.

### CLAIM 2 — DISABILITY BASED DISCRIMINATION

Against All Defendants

*FHA, 42 U.S.C. § 3604(f)(2)*

47.    Defendants engaged in disability-based disparate treatment by ignoring my disclosure, escalating enforcement actions, and involving police instead of addressing my accommodation requests.

### CLAIM 3 — DISCRIMINATORY, TERMS, CONDITIONS, AND PRIVILEGES

Against All Defendants

*FHA, 42 U.S.C. § 3604(b)*

48.    Defendants subjected me to discriminatory terms and conditions of tenancy by treating me differently from other residents, denying clarification of legal demands, and using eviction threats after my disclosed disability needs.

## CLAIM 4 — HARASSMENT / HOSTILE HOUSING

Against All Defendants

*FHA, implied through §§ 3604(b) & 3617*

49.    Defendants created a hostile housing environment (harassment) by repeatedly confronting me in groups, involving police, withholding records, circulating sexualized materials, and maintaining coercive silence after my disability disclosure.

## B.  FAIR HOUSING ACT — SEXUAL HARASSMENT

## CLAIM 5 — SEXUAL HARASSMENT / HOSTILE HOUSING

Against RedPeak Properties, Sherman Residential, Vasquez, Thornburg, and Mabanag

*FHA, 42 U.S.C. § 3604(b); 24 C.F.R. § 100.600*

50.    Defendants created a hostile housing environment when Vasquez engaged in unwelcome personal conduct and abused maintenance access to remain inside my unit, and management responded with retaliatory group confrontation minutes later. This conduct unreasonably interfered with my use and enjoyment of my home.

## CLAIM 6 — QUID PRO QUO / SEXUAL HARASSMENT

Against RedPeak Properties, Sherman Residential, Vasquez, Thornburg, and Mabanag

*FHA, 42 U.S.C. § 3604(b) and § 3617; 24 C.F.R. § 100.600(b)*

51.    After I asserted a personal boundary to unwelcome conduct by Vasquez, Defendants Mabanag and Thornburg retaliated through an immediate coordinated approach to my door and subsequent escalations..

## C.  FAIR HOUSING ACT — RETALIATION

### CLAIM 7 — PROTECTED ACTIVITY RETALIATION

Against All Defendants

*FHA, 42 U.S.C. § 3617*

52.    After I engaged in protected activity by requesting accommodations and notifying leadership, Defendants retaliated by escalating enforcement, rejecting my cure payment, sending my balance to collections, and ceasing communication.

### CLAIM 8 — SEXUAL HARASSMENT / RETALIATION

Against All Defendants

*FHA, 42 U.S.C. § 3617*

53.    Defendants took adverse actions—including group confrontation, disciplinary escalation, and ongoing enforcement—after I rejected Vasquez's inappropriate conduct.

### CLAIM 9 — INTERFERENCE / COERCION / INTIMIDATION

Against All Defendants

*FHA, 42 U.S.C. § 3617*

54.    Defendants interfered with and intimidated me in the exercise of fair housing rights by using police involvement, fear statements, withholding documents, and financial pressure following my disability disclosure.

## D.  COLORADO ANTI DISCRIMINATION ACT

### CLAIM 10 — FAILURE TO ACCOMMODATE (STATE)

Against All Defendants

*C.R.S. § 24-34-502*

55.    Defendants violated CADA by denying my disability-related accommodation requests on March 28, 2025, and refusing to engage in the required interactive process after my disclosure.

### CLAIM 11 — DISABILITY DISCRIMINATION (STATE)

Against All Defendants

*C.R.S. § 24-34-502*

56.    Defendants discriminated against me on the basis of disability by escalating enforcement actions, involving police, and withholding information immediately after I disclosed my trauma history and requested accommodations.

### CLAIM 12 — DISABILITY BASED RETALIATION (STATE)

Against All Defendants

*C.R.S. § 24-34-502 & § 24-34-602*

57.      After I engaged in protected activity under CADA by requesting accommodations and notifying leadership, Defendants retaliated through silence, escalation, rejection of my cure payment, and sending my account to collections.

## CLAIM 13 — SEXUAL HARASSMENT / HOSTILE HOUSING  (STATE)

Against RedPeak Properties, Sherman Residential, Vasquez, Thornburg, and Mabanag

*C.R.S. § 24-34-502(1)(b)(I)-(III)*

58.      Defendants subjected me to sex-based harassment that unreasonably interfered with my use and enjoyment of my home. Vasquez engaged in unwelcome personal conduct and remained inside my unit longer than required for a work order, and management immediately responded with a coordinated confrontation at my door.

## CLAIM 14 — SEXUAL HARASSMENT / RETALIATION (STATE)

Against RedPeak Properties, Sherman Residential, Vasquez, Thornburg, and Mabanag

*C.R.S. § 24-34-502(1)(a) & (1)(b)*

59.      After I rejected unwelcome sexual conduct by Vasquez, Defendants engaged in retaliatory enforcement actions, including an immediate group approach to my door and subsequent disciplinary escalation.

## E.  COLORADO COMMON LAWS

## CLAIM 15 — CONSTRUCTIVE / WRONGFUL EVICTION

Against All Defendants

Colorado Common Law

60.    Defendants' discriminatory actions, police involvement, document withholding, and rejection of my cure payment forced me to vacate my home on May 15, 2025, amounting to constructive and wrongful eviction.

## CLAIM 16 — NEGLIGENT SUPERVISION / HIRING / TRAINING

Against RedPeak Properties, and Sherman Residential

Colorado Common Law

61.    Defendants failed to supervise, train, or correct their property manager despite repeated warnings to executive leadership, allowing escalating misconduct that violated housing law and privacy rights.

## CLAIM 17 — NEGLIGENT RETENTION

Against RedPeak Properties, and Sherman Residential

Colorado Common Law

62.    Despite prior corrective action by former management regarding Vasquez's boundary-crossing behavior, Defendants retained him without restriction and continued granting unsupervised access to tenants' units, leading to foreseeable harm.

## CLAIM 18 — NEGLIGENT FAILURE TO PROTECT / INTERVENE

Against RedPeak Properties, and Sherman Residential, and Windhager

Colorado Common Law

63.    Leadership received notice of misconduct, escalating retaliation, and safety concerns but failed to intervene, protect, or supervise staff. This breach of duty directly contributed to the harm I experienced.

## CLAIM 19 — INVASION OF PRIVACY / UNAUTHORIZED SURVEILLANCE / INTRUSION UPON SECLUSION

Against All Defendants

Colorado Common Law

64.     Defendants intruded upon my privacy by taking and submitting surveillance-labeled photographs of my home despite no camera on my floor and during a period when I was not present.

## CLAIM 20 — ABUSE OF ACCESS / INTRUSION / ABUSE OF AUTHORITY

Against Vasquez; Vicarious liability for RedPeak and Sherman Residential

Colorado common law; FHA § 3604(b) implied

65.     Vasquez remained inside my home longer than necessary for a work order and left only after being confronted, misusing his authorized access for personal reasons. Landlords are liable for maintenance staff abuse of access under agency principles.

## CLAIM 21 — FABRICATION OF EVIDENCE

Against All Defendants

Colorado Common Law

66.     Defendants submitted fabricated or misleading evidence—including the "Mommy Note" and false service claims—to justify enforcement actions and support their CCRD filings.

## CLAIM 22 — CIVIL CONSPIRACY

Against Mabanag, Thornburg, and Vasquez

Colorado Common Law

67.    Defendants Mabanag, Thornburg, and Vasquez agreed, expressly or implicitly, to initiate and escalate retaliatory enforcement actions against me following my rejection of Vasquez's unwelcome conduct. Within minutes of Vasquez leaving my unit, the three coordinated a group confrontation at my door, an overt act taken to create a false basis for discipline and to justify further escalation. Their concerted actions resulted in discriminatory treatment, retaliation, loss of housing, and emotional and financial harm. Each Defendant is jointly and severally liable for the acts committed in furtherance of the conspiracy.

## VII.  REQUEST FOR RELIEF

68.    I respectfully request that this Court enter judgment in my favor and grant the following relief:

- Declaratory Relief

- Injunctive Relief

- Compensatory Damages

- Punitive Damages

- Statutory Damages

- Pre- and Post-Judgment Interest (as allowed by law).

- Attorney's fees and costs (as allowed by law)

- Any Further Relief the Court Deems Just and Proper

## VIII. DEMAND FOR JURY

69.    I request a jury trial on all issues triable to a jury.

## IX. DECLARATION

70.    I declare under penalty of perjury that the facts stated in this Complaint are true and correct to the best of my knowledge.

Executed on December 8, 2025.

Respectfully submitted,

/s/  *Ming Huang*

619 N. Logan St. Unit 408
Denver, Colorado 80203

## X.  ADDRESSES

1.  RedPeak Properties, LLC
    375 S. Broadway Suite 200
    Denver, CO 80209

2.  Sherman Residential LLC
    375 S. Broadway Suite 200
    Denver, CO 80209

3.  Mark Windhager
    375 S. Broadway Suite 200
    Denver, CO 80209

4.  Nicole Mabanag
    175 E. 7th Ave.
    Denver, CO 80203

5.  Justin Thornburg
    175 E. 7th Ave.
    Denver, CO 80203

6.  Fernando Vasquez
    175 E. 7th Ave.
    Denver, CO 80203

## XI. EXHIBITS ATTACHED

A.  Affidavit of Nicole Mabanag (pg. 3-6)

B.  RedPeak's Position Statement

C.  Fernando's Email Before Group Approach

D.  CCRD Charge of Discrimination

E.  Plaintiff's Medical Documentation

**Exhibit A — Affidavit of Nicole Mabanag**

15.    I have read Ms ███████ fair housing complaint, which this matter concerns.

16.    I was the property manager during the timeframe of Ms. ███████ allegations.

17.    I am familiar with Ms. ███████ She was resident at 7S Denver Haus. I am unfamiliar with the scope of her disability or disability status. I did not see any medical documentation in her tenant file, and she is not obviously disabled. I am aware she identifies as female.

18.    Within a few days after becoming the manager at 7S Denver Haus, I met Ms. ███████ Ms ███████ would stop by the office daily to get coffee with her two pups. Initially, my interactions were just saying hello to the pups and general small talk when she would stop to get coffee. After the demands for rent and harassment were served, we did have several very short interactions in the office.

19.    Ms ███████ did not pay her March 2025 rent. Per our policies, we served Ms. ███████ with a Demand for Compliance for non-payment of rent on March 10, 2025. She had until April 11, 2025 to pay in full without being sent to the attorneys' office.

20.    On or about March 27, 2025, we received an email from a resident complaining about the behavior of Ms ███████ Specifically, he indicated he was uncomfortable and feeling unsafe, and wanted the interactions to stop. He included text messages that he had been receiving. Based on the resident's description of the interactions and the text messages, we issued a Demand for Compliance to Ms. ███████ We cited ¶20 of the lease and let her know that her harassing and disturbing behavior would need to cease.

21.    I deny that we made attempts to intimidate Ms ███████ or that we had any intent to intimidate Ms ███████ in how we served the Demand for Compliance. With the changes in the eviction law, now requiring two separate attempts at personal service, our notices are often served with 2 team members. One member to serve the notice and one member to be a witness. This is typically done when it is a demand that is not rent based. However, on March 27, 2025 while we were serving Ms ███████ one of our housekeeping staff, Mercedes Esteves, was vacuuming on that floor. Ms. Esteves walked by us and stopped to say hello. She did not know at the time we were serving a demand on Ms ███████. When Ms. Huang reached out the next day to ask about the demand and the service of the demand, we explained the service process and why there were three team members outside her door at the time of service. There was no intent to have 3

**Exhibit A — Affidavit of Nicole Mabanag**

team members present to serve the Demand for Compliance. Ms.████did not mention a disability or disability-related need.

22.  No one from the office called the police on Ms█████ Denver Police did stop by the office to inform us about the situation between Ms█████ and her neighbor and to ask some questions, including if any action was being taken per the lease. He expressed concern over the ongoing harassment claims from the neighbor. I informed the officer that we were working with our legal department. However, to the best of my knowledge, none of my staff stated they were afraid of Ms. █████. Ms. ██████ mother came to the office while I was speaking with the officer. I believe she spoke to the officer for about fifteen minutes.

23.  On or about April 1, 2025, Ms██████ emailed the office regarding a possible temporary protection order (TPO), but the emails were not clear. There was no mention of her complaints regarding another resident. I let her know if a TPO was received, we would engage our legal team for guidance. I did mention her rent balance because I wanted to see if she had plans to pay the rent before we sent the demand to the attorneys. She indicated that she would bring in a money order for the rent.

24.  On or about April 3, 2025, Ms██████ emailed what appeared to be a formal preservation of records. It was unclear as to what her specific allegations were towards us. She referenced the Denver Police and her neighbor, but she did not provide much context for the records other than she was anticipating in filing a complaint with CCRD for discrimination.

25.  On April 8, 2025, Ms█████ emailed requesting that we pause any eviction proceedings. Although she mentioned emotional distress and financial instability, she did not mention disability. After seeking legal counsel, we continued to move forward with the eviction process per our policies.

26.  As Ms█████ did not pay her rent by April 11, 2025; per our policies, I forwarded her demand to our legal team, Tschetter Sulzer Muccio, PC (TSM) to start the eviction process. As part of the eviction the process with TSM, we are given court dates as part of the filing process. We do not choose the filing date or the court dates.

27.  We send to demands to TSM almost monthly. We have filed approximately ten cases this year, including two against Ms.█████In January 2025, the property

Exhibit A — Affidavit of Nicole Mabanag

also sent Ms ▓▓▓▓ to the attorneys for filing for non-payment of rent. However, Ms ▓▓▓▓ paid prior to the Court issuing a judgment for possession.

28.   Although Ms. ▓▓▓▓ emailed our corporate office regarding filing a CCRD complaint, I had already begun the eviction process with TSM. I deny it was in retaliation for Ms ▓▓▓▓ filing a FH housing complaint. The filing was based on Ms. Huang's non-payment of rent.

29.   Ms. ▓▓▓▓ court date was May 2, 2025. On May 7, 2025, we were informed that the Court issued a judgment for possession, and we could proceed with a sheriff's move out.

30.   It was not until after Ms ▓▓▓▓ received the final sheriff's notice on her door did, she come down to tell us she would pay in full. That was on May 13, 2025. At that time, we had already been granted possession by the courts and we were within our right to refuse payment. I advised Ms. ▓▓▓▓ that we would not be accepting payment and would be proceeding with eviction, and that she can either move out before the sheriff's arrival or wait for the sheriff to arrive for the physical eviction.

31.   It is my understanding that Ms ▓▓▓▓ attempted to file a motion with the Court on or about May 14, 2025, but that motion was denied. Ms ▓▓▓▓ returned keys to the apartment on May 15, 2025.

32.   When Ms ▓▓▓▓ vacated the property, she owed $7,443.63 in unpaid rent and other fees. She owed an additional $415 in contracted cleaning charges and damages beyond normal wear, including two wall patches.

33.   We routinely send former residents to collections when they have not paid their move out balance or set up payment with us. Per RedPeak's policies, Ms. ▓▓▓▓ account was sent to collections 30 days after her move out. We sent Ms. ▓▓▓▓ the final account statement by mail and email and had no response from her. Once Ms ▓▓▓▓ received collections contact, she did reach out to us and asked for documents. She was advised that once the account is in collections, all communication goes through collections. The account is currently in collections.

34.   I never refused to meet with Ms ▓▓▓▓ in-person or "one on one". I even offered to meet with her in-person, and let her know that I had some availability the week the first week of April 2025. I offered to send her some dates and times.

**Exhibit A — Affidavit of Nicole Mabanag**

35.    I vehemently deny that I discriminated against Ms. ███████ or any other resident because of their disability or sex.

I have read the foregoing statement and I state/swear that to the best of my knowledge that such statement is true and accurate.

Respectfully submitted this 28th day of August 2025.

Nicole Mabanag

**Exhibit B — Defendant's Position Statement**

**COLORADO CIVIL RIGHTS DIVISION**
**Complaint No. H2600029711**
**Investigator: Andrew Mayer**

_____

COMPLAINANT:        ██████████████████████    Redacted December 7, 2025
                                                /s/ Penelope H.

RESPONDENTS:        **SHERMAN RESIDENTIAL, LLC; REDPEAK**
                    **PROPERTIES, LLC; NICOLE MABANAG**

_____

**RESPONDENT'S POSITION STATEMENT (EXHIBIT A)**

The above-named Respondents submit their Position Statement to the Division:

**I.    INTRODUCTION**

As we understand the Complaint, Complainant alleges that she was discriminated against due to her disability and sex, denied housing and/or in retaliation for engaging in protected activity. Respondents vehemently deny these allegations, and assert they were acting consistently with their policies and if there were any differences in their behavior, they had a legitimate, non-discriminatory business reason for said differences.

**II.    FACTUAL BACKGROUND**

7S Denver Haus is a multi-family community consisting of one hundred fifteen units. (See Exhibit B, which is attached, Affidavit of Nicole Mabanag, at ¶6). RedPeak Properties, LLC ("RedPeak") is the management company for 7S Denver Haus.

Respondent RedPeak is a fair housing provider. They provide fair housing training for their employees. (Id. at ¶9). RedPeak employees strive to consistently apply RedPeak's policies to all of their residents. Nicole Mabanag (disabled/female/5'1") is the community manager at 7S Denver Haus. She started at 7S Denver Haus in February

1

**Exhibit B — RedPeak's Position Statement**

2025. (Id. at ¶7). She has been in property management for twenty-five years. (Id.). She has training both in fair housing and property management. (Id. at ¶9).

Disability is not readily determined, unless residents self-disclose. However, as the list of resident names indicates, 7S Denver Haus consists of a diverse population, including many female residents. (See Exhibit C). Respondents do not track disability or sex. Respondents do not ask or store that information.

Complainant moved into 7S Denver Haus, unit 515, on or about September 29, 2021. (See Exhibit D). Her current lease term went through July 28, 2026. (Id.). However, Complainant's lease agreement was terminated early on or about May 15, 2025. This was due to non-payment of rent.

During Complainant's tenancy at 7S Denver Haus, she had multiple lease violations. Specifically, non-payment of rent and behavior violations involving her neighbors. (See Exhibit K).

In March of 2025, Complainant failed to pay rent. (Affdvt. Mabanag at ¶19). She was served with a Demand for Compliance (rent) on or about March 10, 2025. (Exhibit K). Per the notice (and law), Complainant was given until April 11, 2025 to pay in full or vacate. (Id.).

Then during the end of March of 2025, Complainant's interactions with one of her neighbors seemed to escalate. Her neighbor reached out to management about Complainant's unwanted behavior directed towards him. (Affdvt. Mabanag at ¶20). In support of his allegation, he provided text messages sent to him by Complainant. The text messages contained inappropriate statements that appeared to be sexual in nature. (See Exhibit L). Denver Police Department ("DPD") also became involved in the matter (Affdvt. Mabanag at ¶22). As part of the investigation, Respondents cooperated with DPD. (Id.).

## Exhibit B — RedPeak's Position Statement

Based on the supporting documentation regarding these allegations, Respondents served Complainant with a Demand for Compliance on March 27, 2025. (Id. at ¶20 and Exhibit K). The demand requested that Complainant stop harassing and/or disturbing her neighbor. (Id.). Although the demand was somewhat vague due to the nature of the allegations, based on Complainant's response to the demand, it was clear she knew what the demand was in reference to. In fact, in her email sent to Respondents the next day, she referenced a couple of interactions with this particular neighbor and mentioned the police. Clearly, demonstrating that she was aware of the incidents in question. (See Exhibit I, 3.28 Email).

In the same email, she also addressed her concerns with how the notice was served. Complainant indicated that as a 5'2" woman, she felt that how the notice was served felt unnecessary, intimidating and invasive. (Id.). She did not mention a disability. Respondent Mabanag was quick to explain the service process, including explaining that one of the team members was only there because she was vacuuming that floor and just happened to stop and say hello to the other team members at the time Complainant opened the door. (Id.). There was no intent to intimidate or harass Complainant. Respondent Mabanag even offered to meet Complainant in-person and offered to send some dates and times for the first week of April to meet. (Id.).

On or about April 1, 2025, Complainant reached out to Respondents regarding a possible temporary protection order ("TPO") being issued; however, it was unclear if Complainant was asking about receiving a TPO or if she was concerned that a TPO would be issued against her. (Exhibit I, 4.01 Email). Respondent Mabanag attempted to address Complainant's questions, and even let her know that if the office received a court order, they would work with their legal team to be in compliance.

## Exhibit B — RedPeak's Position Statement

As part of that particular email chain, Respondents did attempt to separately address the outstanding rent balance. Respondents were hopeful they would not need to send the rent demand to the attorneys' office. Respondents reminded Complainant that the notice expired on April 11, 2025. (Id.). Initially Complainant said she would bring in a money order before the 11th, but then indicated that it would be after she was "summoned" but before court. (Id.). When Complainant failed to pay her rent, per Respondents' policies, Complainant's demand was forwarded to the attorneys, Tschetter Sulzer Muccio, PC ("TSM") for eviction processing. (Affdvt. Mabanag at ¶13 and ¶26).

Prior to the notice expiring, on April 8th, Complainant requested that Respondents hold off on eviction. (Id. at ¶25 and Exhibit I, 4.08 Email). However, the reason given was not due to a disability or disability-related need. Instead, she argued financial instability and emotional distress. The information included in the email would not have been enough to put Respondents on notice of a disability or a disability-related need. Instead, it appeared to be a financial accommodation/request.

In *Spinner v. City of Reno (HUDALJ 09-97-1291-8)*, HUD distinguished between disability related accommodations and financial accommodations finding that financial accommodations were not related to the disability, and therefore they were not necessary as contemplated by the fair housing laws. Specifically, HUD found that it was "not the objective of the Act to enhance the economic condition or the quality of life of the handicapped person not directly related to his housing needs." Further, HUD indicated it was "well established that accommodation of a disabled housing tenant's financial or economic circumstance is not required where there is no direct nexus between the accommodation sought and a hardship created by the plaintiff's handicap." *Spinner v. Reno (HUDALJ 09-97-1291-8)*. In other words, when a request is

4

Exhibit B — RedPeak's Position Statement

based on the tenant's finances, the request is typically not considered to be reasonably related to their disability. That is this case. Complainant never provided any documentation connecting her disability to stopping the eviction.

Complainant's notice expired April 11, 2025 and the following business day the demand was sent to TSM for processing. Ultimately, a court date was set for May 2, 2025. (Affdvt. Mabanag at ¶29). Complainant failed to appear at Court and failed to make a payment pursuant to statute. A judgment for possession entered against Complainant on May 2, 2025. (See Exhibit M). It wasn't until after the judgment entered, on May 13, 2015, that Complainant offered to pay the amounts due. (Affdvt. Mabanag ¶30). Under C.R.S. 13-40-115, a landlord does not need to accept payment in full after judgment enters. Therefore, Respondents had the absolute right to refuse Complainant's payment. It was in no way related to her protected classes or in retaliation for exercising her fair housing rights.

Complainant vacated the subject property on May 15, 2025. (Id. at ¶31). At the time Complainant vacated, she owed $ 7,443.63 in unpaid rent and other fees. (Id. and Exhibit D). She owed an additional $415 in contracted cleaning charges and damages beyond normal wear, including two wall patches. (Id.). Because Complainant failed to pay the outstanding charges, pursuant to Respondents' policies, after thirty-days her account was sent to collections. (Affdvt. Mabanag at ¶14 and ¶33). The collections account is currently active. (Id. at ¶33).

## III.    RESPONDENTS' POSITION

### A.    Respondents Did Not Discriminate Against Complainant in the Terms, Conditions, and Privileges or Services Because of her Disability or Sex

Complainant alleges that Respondents discriminated against her with regard to the terms, conditions, and privileges relating to her tenancy based upon her disability

Exhibit B — RedPeak's Position Statement

status and sex. Specifically, Complainant alleges that Respondents reported her to the police and ignored her communications because of her protected classes. This is simply untrue.

As the Division knows and relies upon, Under Sections 804(f)(2) of Title VIII and 42 U.S.C. § 3604(f)(2) of the Fair Housing Act of 1968 it is unlawful "to discriminate against any person in the terms, conditions, or privileges or sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of handicap." Under Colorado Revised States 24-34-502 and under Sections 804(b) of Title VIII and 42 U.S.C. § 3604(b) of the Fair Housing Act of 1968, it is unlawful "To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."

In reliance upon the Division's standards, to prove a claim of discriminatory terms, conditions, or privileges of housing, a preponderance of evidence in the record must show the following: (1) Complainant is a member of a protected class; (2) Respondents had notice of the Complainant's protected class prior to the alleged adverse actions; (3) Complainant was qualified for the housing; and (4) Respondents treated Complainant less favorably than other residents outside of her protected class or classes in terms, conditions, or privileges of housing.

Here, Complainant is in a protected class as it pertains to her sex. Complainant identifies as female. Respondents rent to many other females. (Exhibit C). Respondent Mabanag is also female. Complainant's disability status is unknown and it is unclear if Complainant is disabled under the HUD/DOJ guidelines.

Arguably, Complainant did not qualify for housing. Complainant failed to pay March's rent. This a material lease violation. She was properly posted with a Demand

6

**Exhibit B — RedPeak's Position Statement**

for Compliance (rent). (Exhibit K). Complainant did not cure the demand during the thirty-day cure period, and then did not statutorily cure the demand after the case had been filed with the courts. (Affdvt. Mabanag at ¶26 and ¶29). A judgment for possession was entered against Complainant on May 2, 2025. (Exhibit M).

Respondents did not contact DPD regarding the conflict between Complainant and her neighbor. (Affdvt. Mabanag at ¶22). This is a separate civil and/or criminal matter between the affected parties, and Respondents are not parties or privy to that matter. However, it would be appropriate for Respondents to cooperate if questioned or contacted by DPD. To that extent, Respondents cooperated with DPD regarding this matter. (Id.).

Respondents did not ignore Complainant. Many of Complainant's emails were confusing or unclear. However, Respondent Mabanag still attempted to respond to Complainant via email and offered to meet with Complainant in person to discuss the matter. (Exhibit I). Respondents clearly did not ignore Complainant or treat her differently. If there was any type of miscommunication and/or failure to respond, it was because Respondents either did not understand what Complainant was requesting or that her request was unclear and not easily deciphered or no response was required. It was not based on her protected classes. She cannot prove intent based on her own conclusory statements.

Based on the examination of the evidence, the Complainant cannot demonstrate a prima facie case. Respondents did not treat Complainant any differently than other residents not in her same protected classes, and consistently applied their policies to Complainant and other residents. (See Exhibits G and H). Many of the allegations made by Complainant simply did not occur. The evidence is clear that neither disability status nor sex was a motivating factor in this matter. Further, Complainant fails to provide any

**Exhibit B — RedPeak's Position Statement**

evidence that shows she was treated unfavorably compared to other residents not in her same protected classes. There is absolutely no evidence of discriminatory intent.

### B.  Respondents Did Not Fail to Accommodate Complainant

Complainant alleges that Respondents failed to make reasonable accommodation for the Complainant's disability by refusing to communicate clearer and refusing to speak to the Complainant one on one. Respondents deny these allegations.

As the Division knows and relies upon, under Colorado Revised Statutes 24-34-502 and under Sections 804(f) of Title VIII and 42 U.S.C. § 3604(f)(3)(B) of the Fair Housing Act of 1968, it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, disability, or national origin.

For Complainant to prevail on her allegation of failure to accommodate her disability, she must establish each of the following elements: (1) that she is a person with a disability, (2) that Respondents knew or reasonably should have known of the disability, (3) the Complainant requested an accommodation in the rules, policies, practices, or services of the Respondents, (4) The requested accommodation may be necessary to afford Complainant an equal opportunity to use and enjoy the dwelling, (5) the Respondents refused the Complainant's request to make such accommodation.

It is unclear if Complainant meets the definition of disability, and therefore, Respondents dispute whether Complainant is disabled / or in the alternative, Respondents dispute they knew or reasonably should have known of her disability. To the best of their knowledge, Complainant has not provided any medical documentation verifying a disability and it does not appear that Complainant is obviously disabled. (Affdvt. Mabanag at ¶17). In other words, Complainant may meet the definition of a

Exhibit B — RedPeak's Position Statement

disability under fair housing guidelines, but she did not provide Respondent with sufficient information to make that determination or allow Respondent to understand that Complainant is disabled or that there was a disability-related need.

Respondents further dispute that Complainant made a reasonable accommodation, or in the alternative, Respondents argue that they were not put on reasonable notice that Complainant was making a reasonable accommodation request. Although Complainant references her height and a dangerous ex and then later, she references emotional distress, she did not put this information in the context of a disability or disability-related need. The Department of Justice guidelines are clear. A resident has to make the accommodation request, and put the landlord on enough notice that a reasonable person would understand they are requesting an exception, change or adjustment to a rule, practice, term or service based on their disability. This did not happen. A reasonable person would not interpret Complainant's emails or requests as an accommodation request. Further, even without the making an accommodation request, Respondent Mabanag did offer to meet with Complainant to discuss the matter, and made various attempts to communicate clearly. (Exhibit I, 3.28, 4.1 and 4.2 Emails).

Lastly, Respondent routinely grants accommodation requests. They routinely allow for assistance animals and Respondent have granted other accommodation requests. (Exhibit F).

**C.    Respondents Did Not Deny Complainant Housing because of Handicap or sex**

Complainant alleges a violation of 804(f)(1) of Title VIII and 42 U.S.C. § 3604(a) of the Fair Housing Act, which addresses "To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make

9

Exhibit B — RedPeak's Position Statement

unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." And allege a violation of 804(f)(1) of Title VIII and 42 U.S.C. § 3604(f)(1) of the Fair Housing Act, which addresses "discriminat[ion] in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." These allegations are false.

In reliance upon the Division's standards, to prevail on a claim of discriminatorily denying or making housing unavailable, the evidence must show that: (1) the Complainant is a member of a protected class; 2) the Complainant was qualified for the housing in question; 3) the Complainant was denied housing; (4) the circumstances give rise to an interference of unlawful discrimination based on a protected class.

Complainant asserts that she is a member of a protected class, concerning disability and sex. Respondents recognize that Complainant identifies as a female. As further discussed above, Respondents are unclear if Complainant is disabled, or in the alternative, Respondents were not reasonably put on notice of Complainant's disability.

However, Complainant was not qualified for housing. Based on Complainant's failure to pay rent, Complainant was in violation of the lease. (Exhibit D). The lease requires rent to be paid every month by the twenty-sixth day of the prior month. (Id.). Complainant did not pay her rent pursuant to the lease or statute. A judgment for possession entered against Complainant on May 2, 2025. (Exhibit M).

As to the third element, Respondents did file an eviction action against Complainant. However, Respondents had a legitimate, non-discriminatory business reason to file against Complainants. Mainly, Complainant was not abiding by the lease agreement. If Complainant had paid her rent timely or made a statutory cure, a judgment for possession would not have entered.

# Exhibit B — RedPeak's Position Statement

For the fourth element, there are no circumstances shown that give rise to an inference of unlawful discrimination. The evidence shows that many of the residents at 7S Denver Haus identify as female. (Exhibit E). The evidence also shows that Respondents continue to rent to disabled individuals during the relevant timeframe and beyond. (Id.). Lastly, the evidence shows that other residents not in Complainant's protected classes were evicted for non-payment. (Affdvt. Mabanag at ¶27 and Exhibit H).

 For the above stated reasons and more, Respondents argue that the fourth element has not been met.

### D.      Respondents Did Not Harass or Retaliate Against Complainant

Complainant alleges she was retaliated against for engaging in protected activity because the eviction case was not paused and Respondents refused to accept her money after a judgment for possession had entered against her.

To prevail on a claim of discriminatory retaliation, the evidence must show that: (1) the Complainant engaged in a protected activity; (2) the Complainant was subjected to adverse treatment that would dissuade a reasonable person from engaging in protected activity, and (3) the Complainant was subjected to the adverse treatment because of the protected activity.

Although an eviction was filed against Complainant, it was in direct response to her non-payment of rent, not in connection with her filing a housing complainant. Filing an eviction for non-payment is consistent with Respondents' policies. (Affdvt. Mabanag at ¶13 and Exhibit H). Non-payment of rent is a material violation of the lease, and can cause financial hardship to Respondents. Respondents were well within their rights to pursue eviction because Complainant had not paid rent. They have filed

11

## Exhibit B — RedPeak's Position Statement

at least ten cases this year for the same or similar reasons. (Affdvt. Mabanag at ¶27). Of those cases, there have been cases against males and non-disabled individuals.

Once judgment enters against a tenant, the landlord can refuse to accept rent. In this case, Respondents exercised this right. Complainant had a poor payment history and a history of altercations with neighbors and staff. (Exhibits D, I, K and L).

There is no evidence supporting Complainant's claims that Respondents retaliated against her for exercising her rights. Consequently, Complainant cannot prove any of the elements of a retaliation claim.

## IV.    CONCLUSION

Based on the above evidence, there is no proof that the Respondents had any type of discriminatory intent in their actions toward Complainant. Respondents apply their policies across the board regardless of disability or sex, including their evictions and collection policies.

Based on the examination of the evidence, Complainant cannot demonstrate a prima facie case. Respondents acknowledge that Complainant is in a protected class. However, the evidence shows that Complainant's protected classes were not a motivating factor in this matter, and that Respondents have not treated others not in Complainant's protected classes more favorably. Complainant has not provided one example of how another resident, not in her protected class was treated more favorably. The evidence shows that Respondents did not retaliate against Complainant, but rather applied their policies consistently and in accordance with the lease agreement. If there were any differences in how Respondents treated Complainant, Respondents had a legitimate, non-discriminatory reason.

Accordingly, Respondents ask that the Division make a determination of No Probable Cause.

**Exhibit B — RedPeak's Position Statement**

Respectfully submitted this 28th day of August 2025.


**s/Lindsay E. Jasper**

Tschetter Sulzer Muccio, P.C.
3600 S. Yosemite St., Ste. 828
Denver, CO 80237
Email: Lindsay@thslawfirm.com
Counsel for Respondents

**Exhibit C — Fernando's Email Before Group Approach**

Redacted December 8, 2025
/s/ Penelope H.

 Gmail

## Work orders

10 messages

---

**Fernando Vasquez <fvasquez@redpeak.com>**                        Thu, Mar 27, 2025 at 10:17 AM
To: ████████████████████████████

Hi ████████
This is Fernando with the maintenance team for 7s Denver haus wanted to set up a date and time that works for you to take care of the work orders you have you can reply to this email or call the office and let them know what works best for you thank you

**Fernando Vasquez**
Maintenance Technician
Sherman Central Portfolio
720.385.3838
175 E. 7th Ave. Denver, CO 80203
Monday – Friday 10am-6pm

---

████████████████████████████                                        Thu, Mar 27, 2025 at 1:53 PM
To: Fernando Vasquez <fvasquez@redpeak.com>

Is today or tomorrow possible?
[Quoted text hidden]

---

**Fernando Vasquez <fvasquez@redpeak.com>**                        Thu, Mar 27, 2025 at 2:08 PM
To: ████████████████████████

Yes today is fine I am working on something at a different property but once I'm done here I will let you know when I'm heading your way

**Fernando Vasquez**
Maintenance Technician
Sherman Central Portfolio
720.385.3838
175 E. 7th Ave. Denver, CO 80203
Monday – Friday 10am-6pm

---

**From:** ████████████████████████████
**Sent:** Thursday, March 27, 2025 1:53:44 PM
**To:** Fernando Vasquez <fvasquez@redpeak.com>

**Exhibit D — CCRD Charge of Discrimination**



**COLORADO**
**Department of Regulatory Agencies**
Colorado Civil Rights Division

### HOUSING DISCRIMINATION COMPLAINT

**CASE NUMBER: H2500029711**

**1.    Complainant(s):**



Denver, CO 80203

Redacted December 7, 2025
/s/ Penelope H.

**2.    The following is alleged to have occurred or is about to occur:**

Terms/Conditions/Benefits/Privileges
Refusal to Provide Accommodation
Otherwise Made Unavailable

**3.    The alleged violation occurred because of:**

Disability (Mental)
Sex (Female)
Retaliation

**4.    Address and location of the property in question (or if no property is involved, the city and state where the discrimination occurred):**

7/S Denver Haus Apartments
175 East 7th Avenue

Denver, CO 80203

**5.    Respondent(s):**

Sheridan Residential, LLC
Owner
375 South Broadway
Suite 200
Denver, CO 80209

1

**Exhibit D — CCRD Charge of Discrimination**

RedPeak Properties, LLC
Property Management Company
375 South Broadway
Suite 200
Denver, CO 80209

Nicole Mabanag
Property Manager
175 East 7th Avenue
Denver, CO 80203

**6.    The following is a brief and concise statement of the facts regarding the alleged violation:**

The Complainant alleges that on or about March 28, 2025, and thereafter, Respondent Sheridan Residential, LLC and Respondent RedPeak Properties, LLC, as Owner and Property Management Company, respectively, of housing located at 175 East 7th Avenue, #515, in Denver, Colorado, more specifically described as ARLINGTON HEIGHTS ADD BLK 22 L 24 TO 29 INC acting by and through Respondent Mabanag and/or their agents/employees, subjected the Complainant to unequal terms, conditions, and privileges of said housing by reporting the Complainant to the police and ignoring her communications; and failed to make reasonable accommodation for the Complainant's disability by refusing to communicate clearer and refusing to speak to the Complainant one on one which accommodations are necessary to allow the Complainant equal opportunity to use and enjoy said dwelling because of her disability (mental) and/or her sex (female), and/or in retaliation for engaging in protected activity.

Specifically, the Complainant states that on or about March 27, 2025, the Respondents served her with a Notice of Violation for allegedly harassing another tenant. Respondent Mabanag and another Respondent employee served the Complainant with the Notice in person in a manner that the Complainant believed to be intimidating. The Complainant states that on or about March 28, 2025, she requested the disability accommodations that the Respondents communicate in a clearer manner and do not approach her in a group. The Complainant stated these accommodations were necessary because of her disability and her stature as a woman. The Complainant alleges that Respondent Mabanag denied these disability accommodations.

The Complainant states that on or about March 28, 2025, a police officer came to her door and threatened to arrest the Complainant for harassment. The Complainant does not know who initially called the police on her but the Complainant alleges that the police officer told her that the Respondent staff had reported that they were "afraid" of the Complainant. The Complainant believes this is based on derogatory stereotypes about her disability status.

The Complainant states that on or about April 1, 2025, she emailed the Respondents asking for guidance on how to handle her issue with another tenant. The Complainant alleges that Respondent Mabanag ignored her requests and only discussed rent payments. The Complainant states that on or about April 8, 2025, the Respondents had discussed initiating eviction proceedings against her but she requested that they pause those evictions based on her financial instability. The Complainant alleges that the Respondents never responded to this request, which

2

**Exhibit D — CCRD Charge of Discrimination**

the Complainant believes was based on her protected classes.

The Complainant states that on or about April 17, 2025, she engaged in protected activity when she notified the Respondents that she intended to file this present Complaint of Discrimination with the Colorado Civil Rights Division.

The Complainant alleges that on or about April 22, 2025, the Respondents served her with an eviction notice, citing overdue rent. The Complainant alleges that on or about May 15, 2025, she vacated the subject property due to the demands in the Respondents' eviction notice.

The Complainant believes that individuals not of her protected classes were treated more favorably in regard to accommodations, reporting, and general communication, and that she was discriminated against based on her protected classes and/or in retaliation for engaging in protected activity.

**7.     The most recent date on which the alleged discrimination occurred:**

May 15, 2025

**8.     Types of Federal Funds identified:**

To be determined.

**9.     The acts alleged in this complaint, if proven, may constitute a violation of the following:**

Colorado Revised Statutes (C.R.S) 24-34-501 et seq. as re-enacted.

**Please sign and date this form:**

**I declare under penalty of perjury that I have read this complaint (including any attachments) and that it is true and correct.**

_____   _____

(Date)

**NOTE : HUD WILL FURNISH A COPY OF THIS COMPLAINT TO THE PERSON OR ORGANIZATION AGAINST WHOM IT IS FILED.**

3

# Exhibit E — Plaintiff's Medical Documentation

## LifeStance HEALTH

Redacted December 7, 2025
/s/ Penelope H.

TO: ████████████████████

FROM:  Jay Ryser, LPC

DATE:  February 16, 2022

RE:      Disability

I'm writing this letter per your request, in reference to your psychiatric illness and disability.

You have had significant difficulties with your functioning for some time, including recent hospitalizations.

Your current diagnoses:

███████████████████████████████████████████████████

F41.0 Panic Disorder

███████████████████████████████████████████████████

F43.12 PTSD, Chronic

███████████████████████████████████████████████████

I do believe you qualify for Disability.   Your symptoms cause significant problems with attention, concentration, and short-term memory.  It's very difficult for you to stay focused on tasks for more than a brief period.  You can become emotionally overwhelmed at times, and may have episodes of intense emotions in class, which may be disruptive to peers and the instructional process.

I'd suggest accommodations of:

1. Either no small group assignments, or groups of no more than one other student, or even being a group of her own (with commensurate class assignments)
2. You may benefit from having additional time to do assignments (twice the time is suggested)
3. You may benefit from having additional time to do tests (twice the time is suggested)
4. Doing remote classes rather than in-person classes are likely to be less over-stimulating

LIFESTANCE HEALTH

Jay Ryser, LPC

jay.ryser@lifestance.com

400 E Hampden Ave, Suite 400

Englewood, CO

DocuSigned by:
*Jay Ryser*
A037E93B8FA0477...